IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERICK LOVINGS, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) <br> WARDEN RICHARD KIRKLAND, ) <br> ) <br> Respondent. ) <br> ) | No. C 05-3532 JW (PR) <br><br> **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner Derick Lovings filed a petition in this court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his no contest plea. The court ordered respondents to show cause why the writ should not be granted. Respondent filed an answer and a memorandum of points and authorities in support of it and lodged exhibits with the court. Petitioner did not file a traverse.[1] For the

---

[1] The court did receive a letter from petitioner, filed March 2, 2007, stating that he cannot show cause because of his "mental competence," and because he has allegedly been the target of reprisals in prison and deprived of necessary papers. Respondent, not petitioner, the court notes, was ordered to show cause.

Order Denying Petition
N:\Pro - Se\9.25.2007\05-3532 LOVINGS.3532.RUL.wpd

reasons discussed below, the court DENIES the petition.

## BACKGROUND

Petitioner, a California state prisoner who is proceeding pro se, pleaded no contest to the first degree murder of his sister, Regina Lovings, admitted to the enhancements and was sentenced in 2001 to fifty-two years in prison. People v. Lovings, 118 Cal.App.4th 1305, 1306-1307 (Cal. Ct. App. 2004). The California Court of Appeal affirmed the conviction and the California Supreme Court denied his petition for review. Id. at 1312; Order to Show Cause ("OSC") at 1. Petitioner has not filed any state habeas petitions.

The facts of the case must be quoted at length:

> In September 2000, the court granted appellant's Faretta (Faretta v. California (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562) motion to represent himself. In November 2000, the court granted his request for counsel, and appointed Theodore Johnson to represent him. In February 2001, a section 1538.5 motion was set for March 16, 2001, and trial was set for April 2, 2001. Appellant appeared in court for the March 16 hearing but Johnson did not. The court stated that it had received a call from Johnson the day before advising that he would not be proceeding with the motion as scheduled, and no motion papers were filed. On March 28, 2001, Johnson moved to continue the April 2 trial date. The motion stated: "Counsel is currently in trial and has been in trial since 2/13/01. Thus, Counsel has not had adequate time to prepare for trial. Also there has been a break down in the attorney-client relationship between attorney and defendant. On 3/14/01 attorney received a letter from Defendant asking attorney to step down from his case."
>
> Appellant filed one of the Marsden motions at issue in this appeal on April 2, 2001. In it, he put check marks in boxes next to the following statements: "Counsel has failed and/or refused to confer with declarent concerning the preparation of the defense"; "Counsel has failed and/or refused to communicate with declarent"; and "Counsel has failed and/or refused to declare prejudice and/or conflict against declarent and due to said failure has taken on the role of a surrogate prosecutor against declarent's interest." In an attached statement, appellant indicated among other things that Johnson had previously done work for him with his former counsel, Jane Doe, on civil matters related to the criminal case, and appellant alleged that he and Johnson had a conflict of interest because of the allegations he had made against Doe. Appellant also attached documentation showing that he had filed a complaint against Johnson with the California State Bar.
>
> At the hearing on April 2, 2001, after listening to appellant's grievances, and responses from Johnson that the court treated as a motion to withdraw as counsel, the court denied the Marsden and withdrawal motions, and

continued the trial date to April 30, 2001. The court noted that "this is not the first time that [appellant] has made a motion to have his counsel relieved ... there [were] a considerable number of letters to the judge concerning the representation of [Jane Doe], then there were considerable complaints about the representation of Mr. Harpham. At one point in September you made a motion to have Mr. Harpham relieved as counsel of record. [¶] ... That was granted. You represented yourself. You were ready to go to trial and then you asked to have an attorney appointed and Mr. Johnson was appointed to represent you. [¶] Now that was a full four or five months ago. This case is now ready for trial. It is going to trial. I don't play games and this is playing games."

Johnson moved again to withdraw as counsel on April 10, 2001; the motion was heard and denied on that date. Appellant filed the other Marsden motion at issue in this appeal on April 23, 2001. He checked the same boxes he had checked in the prior motion, and additional boxes stating: "Counsel did fail and/or refused to subpoena witnesses favorable to the defense and deprived declarant of the testimony critical to the defense"; "Counsel has failed and/or refused to perform and/or to have performed investigations(s) critical and necessary to the defense"; "Counsel has failed and/or refused to secure and present expert witness(es) critical to the defense"; "Counsel has failed and/or refused to prepare and file motion(s) critical to the defense."

On April 30, 2001, Johnson again moved to withdraw and the motion was denied. Later that day, appellant asked the court whether it had "got[ten] anything through the mail," and the court said it "saw no new grounds on which the Marsden should be reraised." On May 2, the court reiterated that it had received appellant's renewed Marsden motion and that it "did not see new factors there"; the motion was thus denied without a hearing.

On May 7, 2001, the court denied appellant's motion to suppress his confession. Shortly after the prosecutor began his opening statement to the jury on that date, appellant interjected, "I'd like to plead guilty right now. I don't want to hear this. I do not want to hear this at all. I wish to plead guilty right now." After the jury was excused, appellant pled no contest to murder in the first degree, and admitted the allegations of the information.

Johnson refused to concur in the plea. Johnson indicated that he had "spent a lot of time on [appellant's] case," and stated: "[Appellant] may find this hard to believe, but I care about what happens to him. I have encouraged him to at least read the opening argument [Johnson had prepared] ... once I got involved in this case and really started reviewing the situation I know at the very least that there are mitigating circumstances to this case at the very least and maybe even justification at the top and a very good chance for manslaughter somewhere in the middle. This plea, I will not take part in it and I have advised him strongly not to do it." Appellant confirmed that he had discussed the case and all possible defenses with Johnson. Appellant said that Johnson had "been very good" and had advised him "that I shouldn't do this." The prosecutor asked appellant, "Also, sir, you are not playing games with anyone, you're not going to come back tomorrow or in the future and say you changed your mind, that you have been railroaded. You're in essence today waiving all your appellate rights concerning this voluntary

plea, correct?" Appellant answered, "Yes."

About a week later, on May 15, 2001, appellant wrote a letter to the court asking to withdraw his plea on the grounds that "I wasn't in my right frame of mind nor did I have legal representation at that time.... [¶] ... [¶] P.S. My apologies to the court for any inconvenience." When appellant's motion to withdraw the plea was heard on June 5, 2001, the court granted Johnson's request to initiate competency proceedings for appellant under section 1368, but stated "for the record that having observed Mr. Lovings throughout ... all the pretrial motions, having read all the paperwork that Mr. Lovings has submitted, having reviewed all the motions that he's submitted to me in writing, having reviewed all the matters that were presented to this court before the matter was assigned to me for trial and having reviewed also all the paperwork that was submitted to the Court of Appeal, I personally do not have a doubt as to Mr. Lovings's competence to stand trial and his knowledge of what was happening, his awareness of the proceedings, his knowledge of the court proceedings and his ability to cooperate with counsel." Criminal proceedings were suspended for appointment of experts to determine whether appellant was competent "to understand the proceedings before him ... at the time of his entry of the plea."

At a hearing on July 19, 2001, a date was set for trial of the competency issue. At a hearing the next day, the court said it had been informed that appellant had told deputies after the previous hearing that he had changed his mind and did not want to have a competency trial. The court asked appellant if that was, in fact, his decision. Appellant replied, "No," and indicated that he wanted to proceed with the trial. Another Marsden motion by appellant was denied on December 3, 2001. On December 7, 2001, appellant was found by a jury to be competent.

On December 10, 2001, the court denied appellant's motion to withdraw his plea. The court told appellant it found "that at the time that you made your entry of the plea that you were informed fully of your rights. I find also that you were competent, you were coherent, you were adamant, you were fully knowing of the consequences of your plea and the ramifications of your plea, and I found absolutely no sign in you of any waivers of your resolve to enter this plea or as to any confusion or inability to understand precisely the proceedings that were before you." The court sentenced appellant on January 16, 2002, to the maximum term permitted by the plea.

On February 26, 2002, appellant filed an amended notice of appeal and application for certificate of probable cause, which identified "ineffective counsel-inadequate representation" among the grounds for review. In an attached "certificate statement," appellant complained among other things about the court's treatment of his request to fire Johnson as his attorney. On the bottom of the first page of the notice and application the court wrote, "Grant cert."

On September 22, 2002, after counsel had been appointed for appellant on appeal, appellant wrote a letter to this court saying, "From this point forward I will be handling my own appeal." On October 28, 2002, we filed an order allowing appellant to proceed in pro. per. On November 1, 2002, we received

Order Denying Petition
N:\Pro - Se\9.25.2007\05-3532 LOVINGS.3532.RUL.wpd       4

> a letter from appellant saying, "I do not wish to appeal."
> On November 4, 2002, we received a letter from appellant withdrawing his requests to proceed in pro. per. and to dismiss the appeal; new appellate counsel for him was appointed on November 13, 2002.

Lovings, 118 Cal.App.4th at 1307-1310.

The court directed respondent to address whether petitioner was denied his right to effective assistance of counsel.[2]

**STANDARD OF REVIEW**

A federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state

---

[2] In its order to show cause, the court directed respondent to address two issues: the one just stated and a second one regarding whether petitioner was denied his right to self-representation. OSC at 2. Upon further review, the court finds that the sole issue before the court is whether petitioner was denied his right to effective assistance of counsel.

Order Denying Petition
N:\Pro - Se\9.25.2007\05-3532 LOVINGS.3532.RUL.wpd      5

court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). A state court decision is an "unreasonable application" of Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." See Williams (Terry), 529 U.S. at 413.

A reviewing federal court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409.

The state court decision to which 2254(d) applies is the "last reasoned decision" of the state court. Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-1092 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion, in this case the opinion of the California Court of Appeal. See Ylst at 801-806; Shackleford v. Hubbard, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

**DISCUSSION**

Petitioner contends that the trial court's denial of his Marsden motions denied him the right to effective counsel under the Sixth Amendment. Petition at 2; OSC at 2.

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas. Bland v. California Dep't of Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994), overruled on

other grounds by <u>Schell v. Witek</u>, 218 F.3d 1017 (9th Cir. 2000) (en banc). The Ninth Circuit has held that when a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. <u>Bland</u>, 20 F.3d at 1475-1476; <u>United States v. Robinson</u>, 913 F.2d 712, 716 (9th Cir. 1990); <u>Hudson v. Rushen</u>, 686 F.2d 826, 829 (9th Cir. 1982). The inquiry need only be as comprehensive as the circumstances reasonably would permit, however. <u>King v. Rowland</u>, 977 F.2d 1354, 1357 (9th Cir. 1992) (record may demonstrate that extensive inquiry was not necessary). In California, a criminal defendant can request a change of appointed counsel by making a <u>Marsden</u> motion. <u>See</u> <u>People v. Marsden</u>, 2 Cal.3d 118 (Cal. 1970).

Regardless of whether the state court failed to rule on the motion to substitute counsel or denied the motion, the ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated. <u>Schell</u>, 218 F.3d at 1024-1025. That is, the habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." <u>Id</u>. at 1026.

Respondent contends that the court is barred from reviewing the petition because petitioner entered a no contest plea. Ans. at 8. In general, a criminal defendant, who, on the advice of counsel, pleads guilty to a charged offense, may not thereafter raise independent claims relating to the deprivation of constitutional rights that antedated the plea. <u>Tollet v. Henderson</u>, 411 U.S. 258, 267 (1973). "[A] guilty plea represents a break in the chain of events which has preceded it in the

1   criminal process." Id.  A defendant having so pled "may only attack the voluntary
2   and intelligent character of the guilty plea by showing that the advice he received
3   from counsel" was not "within the range of competence demanded of attorneys in
4   criminal cases." Id. at 266 (citation removed).

5       The instant case is distinguishable from Tollet for several reasons, not the
6   least of which is that petitioner acted against, and not on, counsel's advice when he
7   pleaded no contest.  Accordingly, the court will disregard respondent's contention.

8       Petitioner's claim is, however, without merit.  As articulated by Schell, the
9   standard to determine whether there has been a Sixth Amendment violation in these
10  circumstances is very high, as the words "a total lack of communication" and "other
11  significant impediment" indicate.  The record shows no evidence that any significant
12  impediment existed or that there was a total lack of communication.  A short review
13  of the facts makes this clear.  The trial court held a hearing to consider petitioner's
14  Marsden motion, after trial counsel Theodore Johnson failed to attend a pre-trial
15  motion hearing and then moved to continue the trial date.  Though it denied
16  petitioner's Marsden motion, the trial court did continue the trial date for several
17  weeks, giving trial counsel time to prepare.  The record shows that, despite his
18  several attempts to withdraw as trial counsel, Johnson was indeed ready to defend
19  petitioner by the time of trial. On the day of trial and in protest of his client's
20  decision to enter a plea, Johnson stated that he had "spent a lot of time on [] [this]
21  case" and that "there are mitigating circumstances to this case at the very least
22  maybe even justification and maybe even justification at the top and a very good
23  chance for manslaughter somewhere in the middle."  On that same day, petitioner
24  told the court that he had "discussed the case and all possible defenses with
25  Johnson," and that Johnson "had been very good."  Petitioner also said that Johnson
26  had advised him not to plead out.  Petitioner disregarded this advice, pleaded no

contest and admitted the allegations of the information.  The court denied a second Marsden motion because it "saw no new grounds on which the <u>Marsden</u> should be reraised."

None of this supports petitioner's contention that the trial court's denials of his <u>Marsden</u> motions violated his right to effective assistance of counsel.  Rather, the record indicates that the trial court carefully considered petitioner's grievances and that trial counsel prepared a defense as well as communicated thoroughly with, and offered legal advice to, his client.

Furthermore, to the extent that petitioner contends that Johnson provided ineffective assistance, the court denies habeas relief.  Claims of ineffective assistance of counsel are examined under <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  In order to prevail on a claim of ineffectiveness of counsel, petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  <u>Id</u>. at 687-688.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u>. at 694.

There is no evidence of ineffective assistance of counsel.  Petitioner rejected Johnson's advice when he decided to plead no contest and therefore the attorney's performance – deficient or not – did not result in prejudice to petitioner.  In other words, because petitioner caused the outcome – his no contest plea – after rejecting trial counsel's advice, he cannot logically contend that there is a reasonable probability that but for trial counsel's alleged deficient performance the outcome would have been different.

Finally, insofar that petitioner's claim is based on the notion that he was not

competent at the time he entered his plea, the court denies the petition. A jury determined that, after the state court held a trial on the issue, that petitioner was competent. Lovings, 118 Cal.App.4th at 1310. The court drew upon this finding when petitioner later moved to withdraw his plea: "you [petitioner] were competent, you were coherent, you were adamant, you were fully knowing of the consequences of your plea and the ramifications of your plea." Id.

Habeas relief on all grounds is DENIED.

## CONCLUSION

The court concludes that the state court's adjudication did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. The court also concludes that its adjudication did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, for the foregoing reasons, the court DENIES the petition.

The clerk shall close the file.

**IT IS SO ORDERED**.

Dated:   September 21  , 2007

JAMES WARE
United States District Judge

Order Denying Petition
N:\Pro - Se\9.25.2007\05-3532 LOVINGS.3532.RUL.wpd     10